Mr. Meacham, you may go forward. Your Honors, may it please the Court, Kevin Meacham from Jones Day has appointed pro bono counsel for Appellant Damian Daley. I would like to reserve two minutes for rebuttal. Go ahead. You raised a bunch of claims, but not all of them were pressed on appeal. So if you could just briefly tell us which are the claims that you are here pressing. Sure, Your Honor. We are appealing the dismissal on summary judgment of Mr. Daley's First Amendment pre-exercise claims. And both, not only claims, but as to parties as well. Sure, as to the individual defendants, which include Harley Lappin, B.A. Bledsoe, Associate Warden Damian Young. And we are pursuing appeal on the First Amendment pre-exercise claim, the Religious Freedom Restoration Act claim, and the equal protection claim. Your Honors, in the appointment order, this Court asked counsel to address two simple questions. First, whether the District Court erred in granting summary judgment as to the Appellant's Religious Freedom Restoration Act claim, and second, whether the District Court erred in granting summary judgment as to the Appellant's First Amendment pre-exercise claim. I would like to address the second question first, since en banc authority from this circuit requires a reversal on that issue. Could you address it also with respect to what the record before the District Court showed concerning the personal involvement of the parties, starting with Director Lappin? Surely, Your Honor. As to Director Lappin, the plaintiff or an appellant, a plaintiff appellant, directed several inmate requests and grievances to Harley Lappin. Also, he was involved in implementing or deriving the policy by which defendants... Is this an attack on a policy? Yes, Your Honor. It's an attack on, you know, defendants repeatedly in their responses to the grievances cited the policy as a reason why they could not accommodate... Is this... Maybe I've misconceived this case. I've understood it to be claims on the part of Mr. Daly as to how his requests were not granted, but I guess I haven't looked at it as an attack on a system-wide or BOP-wide policy. Well, Your Honor, let me step back and say it is an attack on the denials of his requests. Not just the denials of the requests, the process by which those denials were upheld at the District Court level. Also, you know, and it's a pattern within the denials of the requests where the defendants, you know, ignore his request and or rely on the stock policy as reason for denial. But how does that make Mr. Lappin responsible? He wasn't involved in any of the denials. He didn't enforce the policy or decline its enforcement as it relates to your client, right? As to Director Lappin, the plaintiff appellant did submit several requests directly to him. Unfortunately, we do not have the responses of record for those requests. That could present a question of fact that may be pursued on discovery, which my client was not permitted to do before his claims were dismissed. However, those are part of the record. Just the fact he asked, but it doesn't, there's nothing in the record that tells us, nor is there any description even in the complaint of what Mr. Lappin actually did, as opposed to there are little vignettes in the record as to the other three, am I right? Correct, Your Honor. Thank you. Certainly for over 25 years, the Supreme Court and this circuit have required district courts to consider the four factors, set forth in Turner v. Safely, before dismissing a prisoner's constitutional claim. And the district court didn't do it in this case? Correct. All right. And is there any way we can discern that she did so, or is it just we have to send it back and ask her to do it? I think this case is similar to the Enbank case decision in DeHart, also similar to the case Wolf v. Ashcroft, where the court could not determine, based on an underdeveloped record, that, you know, or conduct their own Turner analysis, because the record itself was underdeveloped. And whether that be the fault of the parties at the briefing stages or not, that's not for me to say. But what I can say, what it is to say, is that the court did not conduct the analysis and the facts regarding these factors are not set forth in the opinion and they weren't considered. And certainly, we believe, as I pointed out in our opening brief, that were the court to consider these factors, they would weigh in favor of my client. Let me return, just to attempt clarification, to an answer you gave me relative to what the attack here ideally is. Turner was a case that involved a challenge to a policy. Although this court has since used the Turner analysis in cases that were individual requests that have been denied to prisoners. So again, I'm trying to get to how you're framing this issue. Are you challenging the BOP's dietary program, or are you challenging denials of Daley's specific requests relative to diet? We are challenging denials to Mr. Daley's specific requests relating to diet. Thank you. Okay. As I stated earlier, here the district court did not consider or analyze any of the Turner factors, and indeed, did not even mention Turner before granting summary judgment as to the defendant's or as to the appellant's First Amendment free exercise claim. And instead, the district court inappropriately analyzed the appellant's First Amendment claim under the RFRA's substantial burden test. This failure requires reversal and remand under DeHart and under Wolf v. Ashcroft in order for the court to conduct this analysis on a developed record in the first instance. Defendants have not distinguished DeHart, nor have they provided any reason as to why DeHart should not apply. The district court here erroneously lumped the free exercise challenge and the RFRA claim together for analytical purposes. Correct, Your Honor. But that is not the extent of the error. As far as, you know, as we, and that will take me to the second or the first question that the court asked. The court also did not get to the genuinely believes question, did it? It was not contested by defendants, and it actually was conceded. So therefore, for purposes of this appeal, I believe it's been established. To the extent that you want examples from the record, he submitted affidavits from inmates who were, you know, who, as well as, who had. Well, I misstated that, and I probably misled you by the way I asked that question. If I recall, the district court seemed to make herself some doctrinal distinctions here in what Rastafari actually requires. Did she not? Correct, Your Honor. And could you tell me what that was and how the district court did that? Essentially, the district court found that since, you know, appellant's religion, or at least her view of the religion, didn't require the religious diet that he was asking for or that he requested. Essentially, she determined that, therefore, the denial of that diet could not substantially burden Mr. Daly's practice of his religion. This court and the Supreme Court has repeatedly stated that district courts and courts in general are not supposed to be the arbiters of orthodoxy. They should not be waging into, you know, disputes between the non-orthodox and the orthodox. And they should not be, they really should be limiting their inquiry into whether their belief was sincerely held and religious in nature. And I believe both of those are here, as they were conceded at the district court level, for purposes of summary judgment. So there really aren't many limits or any limit, very few limits on that inquiry? I don't believe so, Your Honor. In fact, in this, I want to be clear that this is, you know, appellant is not asking or appellant's position is not that any request for a religious diet should be complied with as a matter of right. What defendant is arguing is that there's a process when someone does request a diet, and one of that process is an inquiry into whether those beliefs are sincerely held and religious in nature. And as part of that inquiry is that the heart court has said, they can look at certain things like whether, you know, they can look at certain religious beliefs, particularly whether those religious beliefs are being used as And here, the court didn't do that because the defendants simply didn't question his sincerely held religious belief. I take it there's also nothing in the record about other ways he was able to practice or not practice his religion, am I right? There was not. There was a conclusory statement by the district court in its opinion that Mr. Daley was not prevented from religious meals or not religious, religious worship, ceremonies, special holidays, that type of thing. So there wasn't any of that question. And there are certain of those within the Rastafarian religion, for sure. And that would have to be one of the Turner factors? Yes, that's factor number two. And like you intimidated, Your Honor, or suggested, that it includes not just the specific practice question, it also includes the more general, has the person been able to practice their religion? I just, I wanted to ask this actually at the very, very beginning. When you were going through the issues in front of us, do you agree that the injunctive and declaratory relief requests are now mooted by his release? We do, Your Honor. Could we jump ahead to the equal protection claim? Certainly, Your Honor. Because I'm wondering why we should not regard that claim as unexhausted. As, as I'm able to tell from the record we have, Daley never actually complained to prison officials that he was being treated unequally. Which is the sine qua non of a free exercise claim. Your Honor, he never stated that in his, the grievances. However, the district court assumed that it had been exhausted. Defendants did not challenge it at the lower court level. In, in also, the PLRA does not require each prisoner to exhaust or to include in his grievances every single constitutional basis. But the whole purpose of the exhaustion doctrine is to give prison authorities an opportunity to investigate to the extent that's nature, that's, that's required, so that if it is the proper thing to do, the alleged wrong can be righted. How can that be done if the very nature of the complaint doesn't specify what the wrong is, which here, inherent to an equal protection claim, is the claim that you've been treated differently from the way others have been treated? That's true, but also, Your Honor, the, the equal protection claim arises out of the same set of facts that he exhausted in his grievance. You know, to, to hold, or to, to tell the prisoner that he can't bring his claims after he has fully exhausted the facts that give rise to the basis of that claim, you know, would, would present an issue, especially if the fact of, you know, if I, as a hypothetical, if, if I'm an in, inmate, and I request a special diet, how do I know that other people are getting the special diet in order to, to properly set forth my equal protection claim? I, I think in this instance, and I, you know, appellant's position is that he sufficiently exhausted this claim, because it, it arises out of the same denial. I see I'm out of time. Well, we'll, we'll give you time to get to the RFRA claim if you'd like. Which, excuse me, we'll, we'll give you time to, to, to address the RFRA claim. I thought you said on rebuttal. No, no, no. I, I was interested in your position on damages under RFRA. As far as the individuals, I, I believe the damages claim is still in play. The cases that we cited in our brief, I believe, would, would give the defendant arguments as to why he's entitled to damages. The not, some, there's some appellate authority against that. I believe the, and, and I may, as far as I recall, the appellate, the appellate argument you're referring to, I believe, was as far as the waiver, according to the United States, as to the United States. Just the United States. Yes, that, that, that is my recollection, Your Honor. And, and beyond the, the damages issue, as, as far as the substantial burden analysis goes the, the district court aired here, where it aired along with the equal protection claim and the free exercise claim. And it considered or, or, or based its grant of summary judgment on the fact that defend, or appellant's diet is not central to his religious beliefs. Again, this is an improper basis for summary judgment. All right, thank you. We'll have you back on rebuttal. Nice to meet you. Mr. Sturgill. Good morning, may it please the court. Lowell Sturgill from the Department of Justice on behalf of the defendants. Mr. Sturgill, it's certainly not always the case, but it's very, very common that an appellee stands here and looks at the reasoning of the district court. In this case, after reading the district court's opinion, and then reading your brief, it looked to me like this was a case where the appellee had decided not to dance with the one that brung you. Am I, am I looking at this incorrectly, or have you sought to reach the same result the district court did, but by different paths? I think your description is an apt one. Here, the district court did not fully appreciate the implications of this court's DeHart decision with respect to what's permissible in determining whether a plaintiff has made out a substantial burden on their exercise of religion under RFRA, and neither did the government, so that's the, the ruling that you have. And we have then, of course, have identified other grounds, alternative grounds in which you can and should affirm the judgment below. And of course, it's within your discretion to affirm on grounds as long as they're supported by the record. And in that regard, I'd like to go ahead and begin by pointing out that these individual defendants on the Bivens and the RFRA individual capacity claims cannot be held liable on this record because they lack, they either were not the request that was made. I'd like to begin with Director Lappin. The BOP's remedy procedures, which are in the federal register at 28 CFR 542, they state how an inmate is supposed to bring these claims. They start with an informal resolution to a guard. If that doesn't work, then they write a written request to the low-level official. If that's denied, they can appeal to the regional director, and if that's denied, they can appeal to the national office. But that appeal is not to the director of the Bureau of Prisons. That appeal is to the general counsel's office, and that is 28 CFR 542.15. So as a result, although Mr. Daley did address certain inmate requests to the director, those requests would not have gone to him. They would have gone to the central office, and there's no evidence in the record that the director ever was aware of any of this. And then beyond that, you had a discussion in the opening argument about what kind of claim the plaintiff is actually bringing, whether it's a facial claim or whether it's an as-applied claim. And I think you established that it's an as-applied claim. But I would also point out that the policy itself does allow for a process where individual changes can be made to the national certified religious diet. But those changes are not made by the director. They're made by the committee and the general counsel's office, which are responsible for approving the certified religious diet. So even if you look at it in terms of what the policy was, and the plaintiff's in their reply brief said that, well, Director Lappin is responsible because he looked at it that way, again, the policy itself on its face does allow for changes. He requested them, they were denied, but not by Director Lappin. So that takes care of him. The other three defendants are Warden Bledsoe and Associate Wardens Reard Young. And our argument there is that these individuals lack the authority under the BOP's regulations to provide the special diet request that the plaintiff requested. So who has the authority if it's not someone in that chain? It's the individuals who would have addressed, the individuals have the right to change the national certified religious diet program. And if I could just tell you in the record, for example, at page 109 of the joint appendix, there's a ruling by BOP National Appeals Administrator Harrell Watts. And what that says is that he was an individual who had authority to change the national menu. He said that they had considered Daley's request and found it inappropriate. So they decided not to. Also at page 182 of the joint appendix, Supervisory Chaplain Carney also indicated that he was involved in the process, but he's not a defendant here and neither is Watts. So we have signed several cases for the proposition, again, that under principles of qualified immunity and under principles of just who's responsible for what claim that these defendants, these individual defendants can't be held liable where they were actually forbidden by BOP policy to grant the request that the plaintiff had requested. One is- Your view on the record, it's clear that we can make these qualified immunity decisions without sending it back to the district court. Yes, because first of all, the facts that establish that these individuals lack the authority to grant these requests, that's set out in the BOP's food service manual, which this court can take judicial notice of. We printed that in the back of our brief. So you have that before you and the plaintiff has not challenged the accuracy of that. He's not challenged the factual basis of that, nor could he. That is what the policy is. And then second, I would say that what confirms that is when you look at the individual defendants, Rear and Young and Bledsoe, what they said was, we can't grant your request because we don't have the authority to do that. We can't, at our level, make changes to the national menu. So you have two things. You have the policy itself, which sets this out, and you have the specific denials, which confirm it. But what about the other portion of the record where the plaintiff offered affidavits or declarations from other inmates saying, we're at the same facility and we're getting a menu choice that we like? Sure. That's the equal protection claim. But it also sort of dovetails with this, at least on a summary judgment record, whether there's an issue of fact or whether there is any authority to make these changes at the local level when you have others in the facility saying we've gotten what we've asked for. So go ahead. Sure. Well, let's take the religion aspect of it first. And what the record shows is that those exceptions were granted by the medical services department of those institutions, not by the chaplain or the warden or the individuals who would assess a religion-based claim. They were medical claims. And you say that's in the record, not just the district court sort of inferences that maybe they got these differences because of their medical need analogy, something other than their religious beliefs. Well, I should be more precise. At page 219 of the joint appendix, there's a reflection that the Oakdale Medical Department was the department that granted the plaintiff his exception at the institution he was at before he was transferred to USP Lewisburg. But you're right with respect to the... Well, no, I'm sorry. Page 227 of the joint appendix reflects that this inmate, Ricky Smith, who was the main individual the plaintiff says was granted the similar diet, shows that he was granted that diet by the medical staff of USP Lewisburg, again, not the individuals who would be addressing the kind of RFRA claim or religion claim that the plaintiff has made here. So the record does support what the district court said about that. Then with respect to the equal protection aspect of the other inmates claim, our first argument is, Judge Smith, as you said... Let me pursue that with you because I may have misunderstood the response from Mr. Meekam, but I thought he said that the district court had disputed that. My understanding of the government's position is that you did not raise non-exhaustion with respect to the RFRA or the free exercise claim, but you explicitly raised it and argue it at page 42 of your brief with respect to the equal protection claim. That's correct. All right. The plaintiff's argument in their brief is that they rely on this Tennille case. Yes. And Tennille is distinguishable, though, because there... Tennille, as I recall, is a non-presidential opinion. That's correct. And also, in that case, what the court held was that the individual had presented the factual basis for the equal protection claim but hadn't actually used the words equal protection in the request. And the court said, well, that's not enough to say that he hasn't exhausted. But here, again, as we had conceded in the original argument, the plaintiff's inmate request did not mention the factual basis. Well, I'd like to explore that with you, though, because I would like to do it in looking at the non-exhaustion question from two perspectives. First of all, as I asked Mr. Meacham, isn't it important for the institution to have this information? Because the whole purpose of exhaustion is to give the institution the first opportunity to do something about it. But looking at it from another perspective is from the perspective of a pro se or, in this case, a not yet counseled grievance filing a general complaint in layman's language. So we really haven't fleshed this out much in our own jurisprudence, I don't believe. Even as I said, Tenniel is a not precedential opinion. What should be the rule? The rule is, the key is the individual has to exhaust and has to specifically allege the factual basis of the particular kind of claim that he's bringing. So for a religion-based claim... Let me stop you right there. So is it really a notice issue? I mean, the specificity ought to be to the extent that the institution is put on notice as to what they're to inquire into? Yes. And again, the notice, though, has to relate to the nature of the claim. So for a religion claim, the person has to identify the fact that they have a religious belief and the religious belief motivates or requires them to need a special treatment. But for an equal protection claim, it doesn't have to mention religion at all. All it has to mention is that, well, in this case, it might. But they have to say that somebody else who's similarly situated is being given the same kind of treatment that this person is being denied. And that did not take place here in this specific complaint. That's correct. Is Tenniel too loosely written, in your view? I don't think so, actually, in terms of the outcome. The government is not disputing that the person doesn't have to use, you know, special language like equal protection or actually name it correctly as long as they, as Judge Smith said, basically identify the factual basis for the claim. Enough to put the government on notice that has to, okay, now we understand what the complaint is, now we can address it. I'd like to also, before my time is up, say that with respect to religion claim, I think it's very significant that even if the court addresses the claims, despite the individual's lack of authority, it would find that these defendants are entitled to qualified immunity on that claim. Because if they had read this court's cases, a reasonable officer would not have thought that the Bureau has to give the plaintiff what he requests here, which is a natural, organic, low-sodium, kosher, vegan diet. And the three cases are addressed in our brief. One is DeHart v. Horn, the follow-up case that DeHart won. And in that case, you had a prisoner who requested a very similar diet to what this plaintiff requests here. He wanted a diet free of animal products and byproducts. And this court rejected the free exercise claim and said that this would require special ordering off the menu, which would impose costs on the Bureau. And hence, there's no free exercise claim. But what factual record do we have to be able to engage in this analysis? We have a representation, I think, in your brief about the number of prisoners the BOP is responsible for. And you cite to a District of Colorado case that talks about its observations about how there's great advantages to simple and expensive meal plans. But where's the factual record here such that sitting here, we could do this, engage in either the qualified immunity analysis or even the Turner analysis? Well, again, to answer your question, the second key case is Garaway v. Lappin from this court. And that case involved the same institution that this plaintiff was at, USP Lewisburg. And what the court did in that case was review the BOP's policies, which you have before you now, and the BOP's, the food service manual, which is provided in our brief, and the regulations. Those, we think, are the key facts and the only facts you really need in order to make this determination. And in Garaway, that's what the court had before, and the court reviewed the policy and said, well, given the fact that the Bureau has to address the special claims of any number of different religions and has to treat everybody equally, that is enough to defeat a free exercise claim. Actually, Garaway also involved a RFRA claim. So Garaway had both a free exercise claim and a RFRA claim and rejected them. And the third case is Williams versus Morton. But again, I think that the point I'm trying to make here is that, in order to recover against these individual defendants, the plaintiff has to show that a reasonable official reading the cases would have thought that, well, he has a First Amendment right. And the cases would tell him exactly the opposite. Even if there were some possibilities or 50 factual questions, the cases seem to suggest the otherwise. And actually, those cases, I think, are finally sufficient to defeat the RFRA claim on individual capacity. But again, even on a RFRA individual, even on a claim for damages against an individual defendant under RFRA, the defendant is entitled to qualified immunity. The cases on that are Padilla, this is not on our brief, but Padilla versus Yu from the Ninth Circuit and Rasul versus Myers from the DC Circuit make it clear that even in a RFRA claim for individual capacity damages, the qualified immunity doctrine does apply. So if you reach the merits of the religion claim, I think the easiest way for the court to affirm, if it gets past the fact that these defendants either weren't involved or lacked the authority to grant these defendants, they're entitled to qualified immunity. If there are no further questions. One quick question, I think you answered it. Your position is that there is an action for damages against the individuals under RFRA. We actually haven't taken a position on that in the brief, but we don't dispute that for purposes of this appeal. The plaintiff cited some cases in their brief which say exactly that. Right, good. One more question. If with regard to the equal protection claim, this panel did not believe that, or rather did believe that the claim had been exhausted. And so we'd have to get to the merits of the claim. Should we send it back to allow some discovery? How are there sufficient facts here in the record, if you don't win on exhaustion, to determine whether or not these several people were given preferential treatment that was denied this claimant? Sure. What the district court said was, the plaintiff has the burden in any equal protection case to present facts sufficient to show that other people were similarly situated, and that the plaintiff failed to do that here. And the plaintiff said, well, I didn't. Well, how could he? Well, because the government's motion was a motion to dismiss and a motion for some re-judgment. And what the court said in the order on the motion for reconsideration, the court made the point that when that was filed, the court provided the pro se plaintiff with instructions that the district court gives out that explains what that means, and then sort of put the pro se plaintiff on notice that if he had evidence, now was the time to present it, or to explain to the court why he couldn't and he needed discovery. And he didn't do that. If I could say one final thing, just for 15 seconds, that because this is a qualified immunity case, again, the question is, what should you do in your discretion? Should you send it back because you can do that, or just affirm now on the grounds that you've given, which we think are supported by the record? Again, in a qualified immunity case, the cases are clear that the courts are supposed to resolve these claims at the earliest possible time to spare the federal defendants of the burdens of litigation, I think. So again, if you're comfortable that the record does support affirmance, that would be a reason to just go ahead and affirm now, as opposed to just sending it back as kind of a reflexive kind of thing, which you wouldn't do anyway, but thank you very much. Thank you very much, Mr. Sturgill, Mr. Meacham. I guess I should have asked you this if you had said, is it Meacham? It is Meacham, Your Honor. Some of this has Meacham on the mind, I think. Mispronounced my entire life, so it's no offense. Two quick points regarding the qualified immunity defense. First, there is a defined constitutional interest, this court has found so, regarding your right to a diet that complies with your religious beliefs, I think, or excuse me, appellant believes that defendant's definition of, you know, or level of specificity is too narrow for this court's jurisprudence regarding qualified immunity. Secondly, the cases cited by defendants, DeHart, Williams, and Garraway, two of the three, I know, went through the Turner analysis. And in that instance, and I think that's instructive, because a prison official's duty is to apply the law as known. And those cases signal to everyone that you cannot just reflexively deny someone's religious, or request for a diet that complies with their religious belief. It gives them facts that they need to consider before doing that. And I think that's all I have, unless there's any questions from the panel. If not, thank you very much. Thank you. Mr. Meacham. And thank you to both of counsel for a very well presented and very well argued case. We'll take it.